# CARROLL v. GREENWICH INSURANCE COMPANY OF NEW YORK.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

No. 50. Argued November 7, 8, 1905.—Decided November 27, 1905.

Section 1754 of the Iowa Code of 1897, prohibiting combinations of insurance companies as to rates, commissions, and manner of transacting business, is not unconstitutional as depriving the companies of their property or of their liberty of contract within the meaning of the Fourteenth Amendment and the auditor of the State will not be enjoined from enforcing the provisions of the statute.

A company lawfully doing business in a State is no more bound by a general unconstitutional enactment than a citizen of that State.

THE facts are stated in the opinion.

Mr. Charles W. Mullan and Mr. Charles A. Clark, for appellant:

Sections 1754, 1755, 1756 and 1757 of the code of Iowa do not violate or infringe § 6, Art. I, Iowa const., as they operate equally upon every person within the relations and circumstances provided for, and the class of persons affected thereby is a natural and proper class for legislative purposes, and not arbitrarily created by the legislature. Cooley Const. Lim., 6th ed., 480; Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 294; Minneapolis Ry. Co. v. Beckwith, 129 U. S. 29; Orient Ins. Co. v. Daggs, 172 U. S. 560; Missouri Pacific Railway Co. v. Mackey, 127 U. S. 205, 209; Kennedy v. Insurance Co., 165 Pa. St. 183.

The statute in question extends to and embraces equally all persons and corporations who fall within the classification, and is therefore valid under the state constitution. Barbier v. Con-

*nolly,* 113 U. S. 27; *Sutton* v. *State,* 96 Tennessee, 696; *Des Moines* v. *Bolton,* 102 N. W. Rep. (Iowa), 1045; *State* v. *Garbroski,* 111 Iowa, 499; *Iowa Land Co.* v. *Soper,* 39 Iowa, 112; *McAunich* v. *M. &c. R. Co.,* 20 Iowa, 338; *Morris* v. *Stout,* 110 Iowa, 659.

The statute in this case does not contravene any of the provisions of § 30, Art. III, Iowa constitution. *Smith* v. *Judge,* 17 California, 554; *French* v. *Teschemaker,* 24 California, 544.

Nor does it violate or infringe § 10, Art. I of the Constitution of the United States, and it does not impair the obligation of any existing contract. *Edwards* v. *Kearzey,* 96 U. S. 603; *Denny* v. *Bennett,* 128 U. S. 495; *Lehigh Water Co.* v. *Easton,* 121 U. S. 391; *Central Land Co.,* v. *Laidley* 159 U. S. 109; *Pinney* v. *Nelson,* 183 U. S. 147; *Water Works Co.* v. *Oshkosh,* 187 U. S. 439.

The Iowa statute does not deprive any person of liberty or property, and does not restrict or abridge the liberty of contract; nor does any provision of such statute in any manner violate or infringe any provision of the Fourteenth Amendment to the Federal Constitution. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Morris Run Coal Co.* v. *Barclay Coal Co.,* 68 Pa. St. 173; *Arnot* v. *Pittston & Elmyra Coal Co.,* 68 N. Y. 558; *Cent. Ohio Salt Co.* v. *Guthrie,* 35 Ohio St. 666; *Craft* v. *McConoughy,* 79 Illinois, 346; *People* v. *Chicago Gas Trust Co.,* 130 Illinois, 268; *Richardson* v. *Bull,* 77 Michigan, 632; *Santa Clara Co.* v. *Hayes,* 79 California, 387; *India Bagging Ass'n* v. *Kock,* 14 La. Ann. 168; *Northern Securities Co.* v. *United States,* 193 U. S. 197, 339; *People* v. *Sheldon,* 139 N. Y. 251; *Atty. Gen.* v. *Fireman's Fund Ins. Co.,* 152 Missouri, 45; *Monnett* v. *Buckeye Pipe Line Co.,* 61 Ohio St. 520; *Stanton* v. *Allen,* 5 Denio, 334; *Watson* v. *Harlem & N. Y. Nav. Co.,* 52 How. Prac. 348; *Anderson* v. *Jett,* 89 Kentucky, 375; *Nester* v. *Continental Brewing Co.,* 161 Pa. St. 473; *Standard Oil Co.* v. *Adoue,* 83 Texas, 650; *Park & Sons Co.* v. *Druggists Ass'n,* 50 N. Y. Supp. 1064; *People* v. *Milk Exchange,* 145 N. Y. 267; *Emery* v. *Ohio Candle Co.,* 47 Ohio

St. 320; *Chapin* v. *Brown Bros.*, 83 Iowa, 156; *DeWitt Wire Cloth Co.* v. *N. J. Wire Cloth Co.*, 14 N. Y. Supp. 277; *United States* v. *Knight Co.*, 156 U. S. 1; *United States* v. *Freight Ass'n*, 166 U. S. 290; *United States* v. *Joint Traffic Ass'n*, 171 U. S. 505; *Addyston Pipe & Steel Co.* v. *United States*, 175 U. S. 228; *Barron* v. *Baltimore*, 7 Pet. 247; *Fox* v. *State of Ohio*, 5 How. 434; *Withers* v. *Buckley*, 20 How. 90; *Twitchell* v. *Commonwealth*, 7 Wall. 326; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 176; *Spies* v. *Illinois*, 123 U. S. 166; *Bridge Co.* v. *Dix*, 6 How. 531; *State* v. *Phipps*, 50 Kansas, 609; *Paul* v. *Virginia*, 8 Wall. 168; *Mo. Ry. Co.* v. *Mackey*, 127 U. S. 205; *Orient Ins. Co.* v. *Daggs*, 172 U. S. 557; *Hooper* v. *California*, 155 U. S. 648.

Under the uniformity clauses of the Iowa constitution, a statute prescribing regulations for actions on insurance policies different from those on other contracts is valid. *Christie* v. *Life Ins. Co.*, 82 Iowa, 360.

A method assessing railway companies different from the method of assessing other taxpayers is not invalid. *Central Iowa R. R. Co.* v. *Board*, 67 Iowa, 199. So also as to express and telegraph companies. *U. S. Ex. Co.* v. *Ellison*, 28 Iowa, 370.

The statute establishing the liability of railroad companies to employés for negligence of co-employés is valid. *McAunich* v. *M. & M. Ry. Co.*, 20 Iowa, 338; *Deppe* v. *Ry. Co.*, 36 Iowa, 52. Also one assessing state banks for taxation differently from national banks. *Primghar State Bank* v. *Rerick*, 64 N. W. Rep. 801. And see *Martin* v. *Blattner*, 86 Iowa, 286.

This court will follow the construction of the state court in these matters. *Chicago &c. R. R. Co.* v. *Iowa*, 94 U. S. 163. See also *Field* v. *Barber Asphalt Co.*, 194 U. S. 621; *Kentucky R. R. Tax Cases*, 115 U. S. 321; *Hayes* v. *Missouri*, 120 U. S. 68; *Magoun* v. *Ill. &c. Bank*, 170 U. S. 283; *Gulf &c. Railroad Co.* v. *Ellis*, 165 U. S. 150.

The right of contract may be subjected to restraints demanded by the safety and welfare of the State. *St. Louis &c. Ry.* v. *Paul*, 173 U. S. 404; *Knoxville Iron Co.* v. *Harbinson*, 183

U. S. 13, 22; *Smiley* v. *Kansas,* 196 U. S. 456; *Chapin* v. *Brown,* 83 Iowa, 156.

The right to contract for a harmful combination is not to be upheld. *Northern Securities Co.* v. *United States,* 193 U. S. 197. So as to contracts to suppress competition. *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 42; *National Cotton Oil Co.* v. *Texas,* 197 U. S. 115.

*Lochner* v. *New York,* 198 U. S. 45, simply held such restraints did not apply to restrictions upon the occupation and employment of bakers as a class.

As to other occupations, eight-hour laws have been sustained, although they necessarily limited the right of contract. *Holden* v. *Hardy,* 169 U. S. 366; *Atkin* v. *Kansas,* 191 U. S. 223; see also *Mugler* v. *Kansas,* 123 U. S. 661.

Also see laws prohibiting the manufacture and sale of colored oleomargarine, a healthful food product, which remained wholesome after the coloring. *Capital City Dairy Co.* v. *Ohio,* 183 U. S. 238; *McCray* v. *United States,* 195 U. S. 62.

Nor can the right of contract be sustained as to a combination to injure the business of another. *Aikens* v. *Wisconsin,* 195 U. S. 194. See also Iowa code, §§ 5060–5067; *Beechley* v. *Mulville,* 102 Iowa, 602.

A State may impose any restrictions it may see fit upon foreign corporations. *Fritts* v. *Palmer,* 132 U. S. 288; *Allgeyer* v. *Louisiana,* 165 U. S. 583; *Dayton Coal Co.* v. *Barton,* 183 U. S. 24; *Farmers' Ins. Co.* v. *Dabney,* 194 U. S. 304.

And may exclude them altogether unless restrained by some other provision of the Federal Constitution than the Fourteenth Amendment. *Silver Horn Co.* v. *New York,* 143 U. S. 314; *Ducat* v. *Chicago,* 10 Wall. 415.

The rule sustained in a case involving right of contract affecting competition under a Texas statute. *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 42; *Nat. Oil Co.* v. *Texas,* 197 U. S. 115.

And see, construing statutes of Missouri and California, regulating insurance, *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557; *Hooper* v. *California,* 155 U. S. 648.

*Mr. John G. Johnson* and *Mr. James C. Davis,* with whom *Mr. George H. Carr* was on the brief, for appellee:

The Federal Court in equity has jurisdiction to pass upon the validity of a statute claimed to be void as in violation of the Constitution, when the enforcement of such statute will create a multiplicity of suits or cause great and irreparable injury, and herein an action of this character is not an action against the State. *Osborn v. United States Bank,* 9 Wheaton, 738; *Pennoyer v. McConnaughy,* 140 U. S. 1; *Scott v. Donald,* 165 U. S. 107; *Hutchinson v. Beckham,* 118 Fed. Rep. 399.

Corporations equally with individuals may invoke the aid of the Federal Constitution, because they are persons within the meaning of the Fourteenth Amendment to the Constitution of the United States. The acts, whose constitutionality is attacked, are not made conditions to corporate admission within the State, or to corporate existence. *Santa Clara County v. Southern Pacific Ry.,* 118 U. S. 394; *Pembina Mining Co. v. Pennsylvania,* 125 U. S. 181, 189; *Missouri Pacific Ry. v. Mackey,* 127 U. S. 205; *M. & St. L. Ry. v. Herrick,* 127 U. S. 210; *M. & St. L. Ry. v. Beckwith,* 129 U. S. 26; *Charlotte Railway v. Gibbes,* 142 U. S. 386; *Covington Turnpike Co. v. Sandford,* 164 U. S. 578; *Gulf, Col. & Santa Fé Ry. v. Ellis,* 165 U. S. 150; *Insurance Co. v. Morse,* 20 Wall. 451; *Cargill Co. v. Minnesota,* 180 U. S. 452; *N. Y. Ins. Co. v. Smith,* 41 S. W. Rep. 687.

The Iowa statutes especially providing for foreign corporations doing business in Iowa are §§ 1637–1639, Code of 1897. For special provisions as to foreign insurance companies doing business in Iowa see §§ 1721–1725, Code of 1897.

The legislature of a State, under the guise of protecting public interests, may not arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. *Lawton v. Steele,* 152 U. S. 133; *Allgeyer v. Louisiana,* 165 U. S. 578; *Lochner v. New York,* 197 U. S. 45; *State v. Kreutzberg,* 90 N. W. Rep. 1098 (Wis.).

Under the guise of police regulation the rights of persons

and property cannot be invaded by legislative action, and when such action takes away the property of a citizen, or interferes with his personal liberty, it is the province of the courts to determine whether it is an appropriate remedy for the preservation of the safety and welfare of society. *Ritchie v. People,* 155 Illinois, 98; *Bessette v. People,* 193 Illinois, 334; *In re Jacobs,* 98 N. Y. 98, 107; *People v. Marx,* 99 N. Y. 377; *People v. Gillson,* 109 N. Y. 389.

Reasonable contracts in restraint of trade are not void or against public policy. This is especially true where the subject of the contract is not a prime necessity or staple of commerce. *Oregon Nav. Co. v. Winsor,* 20 Wall. 69; *Fowle v. Park,* 131 U. S. 97; *Chicago Railway Co. v. Pullman Co.,* 139 U. S. 89; *Northern Securities Co. v. United States,* 193 U. S. 361; *Smiley v. Kansas,* 196 U. S. 454; *Central Shade Roller Co. v. Cushman,* 143 Massachusetts, 353; 9 N. E. Rep. 629; *Herriman v. Menzies,* 115 California, 16; *Manchester & L. R. R. v. Concord,* 20 Atl. Rep. 385.

Issuing policies or contracts of insurance is not commerce. *Paul v. Virginia,* 8 Wall. 168, 183; *Nathan v. Louisiana,* 8 How. 73; *Insurance Co. v. Massachusetts,* 10 Wall. 566; *Doyle v. Insurance Co.,* 94 U. S. 535; *Philadelphia Fire Ass'n. v. New York,* 119 U. S. 110; *Queen Insurance Co. v. State,* 86 Texas, 250.

For cases in which legislation has been held to be in contravention of the Fourteenth Amendment of the Constitution of the United States where the classification has been one of arbitrary selection, and where the liberty of contract has been arbitrarily and without just cause invaded, see cases cited *supra* and Cooley's Const. Lim., 5th ed., §§ 484–486; 6th ed., pp. 481–483; *Cotting v. Kansas City Stock Yards,* 183 U. S. 79; *Connelly v. Sewer Pipe Co.,* 184 U. S. 540; *State v. Haun,* 61 Kansas, 504; *Frorer v. People,* 141 Illinois, 171; *State v. Goodwill,* 33 W. Va. 179; *State v. Fire Creek Coal Co.,* 33 W. Va. 188; *State v. Loomis,* 115 Missouri, 307, 315; *Godcharles v. Wigeman,* 113 Pa. St. 431, 437; *Dibrell v. Morris Heirs,* 15 S. W. Rep. 87, 95; *Republic Iron & Steel Co. v. State,* 66 N. E. Rep. (Ind.) 1006;

*Vanzunt* v. *Waddell,* 2 Yerger, 260, 270; *Millett* v. *People,* 117 Illinois, 294; *Harding* v. *People,* 160 Illinois, 459; *Eden* v. *People,* 161 Illinois, 296; *Chicago* v. *Netcher,* 183 Illinois, 104; *Bailey* v. *People,* 190 Illinois, 28; *Johnson* v. *Railway,* 43 Minnesota, 222; *Sutton* v. *State,* 96 Tennessee, 696; *State* v. *Garbroski,* 111 Iowa, 498; *State* v. *Jackman,* 42 L. R. A. 438 (N. H.); *S. & N. Alabama Ry.* v. *Morris,* 65 Alabama, 193, 199; *Chicago & St. L. Ry.* v. *Moss,* 60 Mississippi, 641; *Wilder* v. *Chicago & West Mich. Ry.,* 70 Michigan, 382; *St. Louis Railway* v. *Williams,* 49 Arkansas, 492; *San Antonio Railway* v. *Wilson,* 19 S. W. Rep. 910; *Wallace* v. *Railway,* 94 Georgia, 732; *Street* v. *Varney Electrical Co.,* 61 L. R. A. 155; *Rodgers* v. *Color,* 166 N. Y. 1.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill brought by a number of fire insurance companies, incorporated in States other than Iowa, to enjoin the auditor of that State from enforcing §§ 1754, 1755 and 1756 of the Iowa Code, 1897. The ground of the bill is that these sections are invalid under the state constitution and the Fourteenth Amendment of the Constitution of the United States. There is a reference also to Article 1, section 10, and an oblique suggestion that the law impairs the obligation of contracts. The defendant demurred, and the Circuit Court issued an injunction as prayed, which was made perpetual by final decree. 125 Fed. Rep. 121. Thereupon the defendant appealed to this court.

By section 1754, "It shall be unlawful for two or more fire insurance companies doing business in this State, or for the officers, agents or employés of such companies, to make or enter into any combination or agreement relating to the rates to be charged for insurance, the amount of commissions to be allowed agents for procuring the same, or the manner of transacting the fire insurance business within this State; and any such company, officer, agent or employé violating this pro-

vision shall be guilty of a misdemeanor," and a fine is imposed
for each offense.   By § 1755 it is made the duty of the auditor
of state to summon for examination, under oath, any officer,
agent or employé suspected of violating § 1754, and if he de-
termines that the company is guilty, or if the officer or agent
fails to appear, to revoke the authority of the company to do
business in the State for one year.   By § 1756 an appeal is
given from the decision of the auditor to the District Court,
the case to be tried *de novo*, as equitable causes are tried.   By
§ 1757 the statements made upon the examination before the
auditor or county court shall not be used in any criminal
prosecution against the person making them.

The bill sets forth the necessity for every insurance company
to gather all the experience available into one mass and to
analyze and classify it scientifically in order to ascertain the
true value of risks, and that it will add greatly to the expense
if each company is required to employ a separate person to do
the work.   It charges, upon information and belief, that if the
plaintiffs attempt to combine their experience and to employ
the same person to analyze it, the auditor will summon them
and revoke their authority to do business in the State.   It
further alleges that the plaintiffs desire not only to do what
has been stated for their guidance in establishing rates, but
to agree what classes of risks are non-insurable, how various
risks shall be classified, and as to other matters relating to the
manner of doing business.   It repeats the charge, upon in-
formation and belief, that if the plaintiffs proceed in this
manner the auditor will order an examination and revoke their
licenses, and prays for an injunction against enforcing in any
manner the above-mentioned sections of the Iowa Code.   The
Circuit Court considered that the statute was not invalid under
the constitution of Iowa, but held that the prohibitions of
agreements as to the amount of commissions to be allowed,
or as to the manner of transacting the fire insurance business
in the State, were contrary to the Fourteenth Amendment.
While waiving a discussion of the clause against combinations

as to rates, it seemingly regarded the provisions of § 1754 as inseparable, and issued a general injunction forbidding the enforcement against the plaintiffs of §§ 1754, 1755 and 1756.

We assume, for purposes of decision, that the bill means that the auditor threatens and intends to enforce the act in case the plaintiffs do what they desire to do, and that if § 1754 is contrary to the Constitution of the United States, a proper case for an injunction is made out. *Osborn* v. *Bank of the United States,* 9 Wheat. 738, 839, 840. See *Cleveland* v. *Cleveland City Ry. Co.,* 194 U. S. 517, 531; *Detroit* v. *Detroit Citizens' Street Ry. Co.,* 184 U. S. 368, 378. We assume further that the position of the plaintiffs is not affected by the fact that they are foreign corporations. The act is in general terms, and hits all insurance companies. If it is invalid as to some, it is invalid as to all. *United States* v. *Ju Toy,* 198 U. S. 253, 262, 263. That the requirements of the act might have been made conditions to foreign companies doing business in the State, *Fidelity Mutual Life Ins. Co.* v. *Mettler,* 185 U. S. 308, *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28, is immaterial, since, as we understand the statute, the legislature did not attempt to reach the result in that way. A company lawfully doing business in the State is no more bound by a general unconstitutional enactment than a citizen of the State. *W. W. Cargill Co.* v. *Minnesota,* 180 U. S. 452.

We pass to the question upon which the Circuit Court decided the case, namely, the constitutionality of § 1754, the only section which we find it necessary to consider. Whatever may be thought of the policy of such attempts, it cannot be denied in this court, unless some of its decisions are to be overruled, that statutes prohibiting combinations between possible rivals in trade may be constitutional. The decisions concern not only statutes of the United States, *Northern Securities Co.* v. *United States,* 193 U. S. 197, *Swift & Company* v. *United States,* 196 U. S. 375, but also state laws of similar import. *Smiley* v. *Kansas,* 196 U. S. 447; *National Cotton Oil Co.* v. *Texas,* 197 U. S. 115.

In view of these cases further discussion is unnecessary, but we will add a few words. While we need not affirm that in no instance could a distinction be taken, ordinarily if an act of Congress is valid under the Fifth Amendment it would be hard to say that a state law in like terms was void under the Fourteenth. It is true that by the provision in the body of the instrument Congress has power to regulate commerce, and that the act of Congress referred to in the cases cited was passed in pursuance of that power. But even if the Fifth Amendment were read as contemporaneous with the original Constitution, the power given in the commerce clause would not be taken to override it so far as the Fifth Amendment protects fundamental personal rights. It is only on the ground that the right to combine at will is a fundamental personal right that it can be held to be protected by the Fourteenth Amendment from any abridgment by the State. *Cincinnati Street Ry. Co.* v. *Snell*, 193 U. S. 30, 36. Many state laws which limit the freedom of contract have been sustained by this court, and therefore an objection to this law on the general ground that it limits that freedom cannot be upheld. There is no greater sanctity in the right to combine than in the right to make other contracts. Indeed, Mr. Dicey, in his recent work on Law and Public Opinion in England during the Nineteenth Century, indicates that it is out of the very right to make what contracts one chooses, so strenuously advocated by Bentham, that combinations have arisen which restrict the very freedom that Bentham sought to attain, and which even might menace the authority of the State. If then the statute before us is to be overthrown more special reasons must be assigned.

At the argument before us more special reasons were assigned. It was pressed that there is no justification for the particular selection of fire insurance companies for the prohibitions discussed. With regard to this it should be observed, as is noticed by the appellees, that a general statute of Iowa prohibits all contracts or combinations to fix the price of any article of merchandise or commodity, or to limit the quantity

of the same produced or sold in the State, Code of 1897, § 5060, and that this section covers fire insurance. *Beechley* v. *Mulville*, 102 Iowa, 602. Therefore the act in question does little if anything more than apply and work out the policy of the general law in a particular case. Again, if an evil is specially experienced in a particular branch of business, the Constitution embodies no prohibition of laws confined to the evil, or doctrinaire requirement that they should be couched in all-embracing terms. It does not forbid the cautious advance, step by step, and the distrust of generalities which sometimes have been the weakness, but often the strength, of English legislation. *Otis* v. *Parker*, 187 U. S. 606, 610, 611. And if this is true, then in view of the possible teachings to be drawn from a practical knowledge of the business concerned, it is proper that courts should be very cautious in condemning what legislatures have approved.

If the legislature of the State of Iowa deems it desirable artificially to prevent, so far as it can, the substitution of combination for competition, this court cannot say that fire insurance may not present so conspicuous an example of what that legislature thinks an evil as to justify special treatment. The imposition of a more specific liability upon life and health insurance companies was held valid in *Fidelity Mutual Life Insurance Co.* v. *Mettler*, 185 U. S. 308. See also *Missouri Pacific Ry. Co.* v. *Mackey*, 127 U. S. 205; *Orient Insurance Co.* v. *Daggs*, 172 U. S. 557; *Otis* v. *Parker*, 187 U. S. 606; *Home Life Insurance Co.* v. *Fisher*, 188 U. S. 726, 727.

But it is said that, however it may be as to some regulations of fire insurance, these, or at least the last two of them, forbidding agreements as to agents' commissions and the manner of transacting business, are not to be justified. In order to make this out the scope of the provisions was exaggerated both in the argument and in the bill. The bill seems to assume that the statute forbids insurance companies to obtain and use each other's experience, or to employ the same person to work up the results. It does not. It simply forbids an agreement be-

tween the companies relating to the rates which may be based upon those results. No doubt an agreement between the companies readily would be inferred, if they were found all to charge the same rates; but an agreement between the companies is the only thing aimed at, and if they avoid that they escape the law. So it was suggested in argument that they could not employ the same adjuster in case of loss. We do not perceive anything to hinder their doing so, although it may be that they would have to be careful about the terms of his authority. The object of the law, we assume, until the Iowa Court shall decide otherwise, is single, to keep up competition, and the general language is to be restricted by the specific provisions and to the particular end. Limited as we understand it to be limited, the statute goes no further than others which have been sustained, and does not contravene the Constitution of the United States.

The argument before us very properly was rested on the Fourteenth Amendment. Therefore it is unnecessary to discuss the other objections suggested in the bill.

Although we have conceded that the bill makes a case for an injunction if its premises are true, it cannot be understood to charge that the auditor will go further than to enforce the act as properly construed. The allegations upon information and belief, which we have stated, probably mean no more than that the plaintiffs reasonably suppose that the auditor will do his duty. They are pressed to the verge when they are taken to set forth a threat to do that. They certainly do not show that he threatens to do more.

*Decree reversed.*

Mr. Justice Harlan, concurring.

It is clear from the averments of the bill that the insurance companies had not, prior to the institution of this suit, made any combination or agreement, among themselves, relating to the rates to be charged for insurance or to the amount of com-

missions to be allowed agents for procuring insurance or to the manner of transacting fire insurance business within the State.. They expressed a desire to make such a combination or agreement, but were apprehensive that by doing so they would come into conflict with the state authorities. The auditor had done nothing under the statute and will have nothing to do in execution of its provisions, unless the insurance companies enter into the forbidden combination or agreement. Nevertheless, the plaintiffs came into court, avowed that they had not as yet violated the statute, but asked to be informed whether, in the event they concluded to do so, their officers, agents or employés could be legally summoned before the state auditor for examination, as prescribed in section 1755. In other words, in advance of anything being done in violation of the statute or of any steps being taken by the auditor in execution of its provisions, the opinion of the court was asked and obtained as to its constitutionality. This is a very convenient—and, in my judgment, a mischievous—mode of obtaining the opinion of a court upon an abstract question of the constitutionality of a statute which has not been and may never be violated, and under which no case may ever arise calling for judicial interference. It is as if the plaintiffs had addressed a personal communication to the court asking to be informed as to what they might safely do. It seems to me that the suit has been prematurely brought. If the plaintiffs should make such a combination as is forbidden by the statute, the time to seek judicial interference in their behalf would be when the state auditor proceeds or in some definite way indicates his purpose to proceed under section 1755. I think the decree below should be reversed and the bill ordered to be dismissed, upon the ground that no facts existed, at the time the suit was brought, to justify a judicial tribunal in delivering a judgment to the constitutionality of the state statute.

As, however, the court considered the case upon the merits, it is appropriate to say that I concur with the court in holding that the section of the statute which is assailed is not invalid.

The business of fire insurance is of such a peculiar character, so intimately connected with the prosperity of the whole community, and so vital to the security of property owners, that it is competent for the State to forbid combinations and agreements among fire insurance companies doing business within its limits, in reference to rates, agents' commissions and the manner of transacting their business. If, in the judgment of the State, the people who desire insurance upon their property are put at a disadvantage when confronted by a combination or agreement among insurance companies, I do not perceive any sound reason why, preserving the individual right of contracting, it may not forbid such combinations and agreements, and thereby enable the insured and insurer to meet on terms of equality. Surely, the State could enact such a regulation with reference to companies organized under its own laws. If that be so, it cannot be that such a regulation may not be made applicable to foreign insurance companies doing business in the State only by its consent.